**NOT FOR PUBLICATION**

*CL*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

NEVILLE RAINFORD,                        :
                                         :    Civil Action No. 11-7488 (SRC)
              Petitioner,                :
                                         :
        v.                               :    **OPINION**
                                         :
ERIC H. HOLDER,                          :
                                         :
              Respondents.               :

**APPEARANCES:**

Petitioner pro se
Neville Rainford
A#38-359-7
Essex County Correctional Facility
354 Doremus Avenue
Newark, NJ 07105

**CHESLER,** District Judge

    Petitioner Neville Rainford, an alien detained in connection

with removal proceedings and currently confined at Essex County

Correctional Facility, has submitted a petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2241[1] and has paid the $5

---

    [1] Section 2241 provides in relevant part:

    (a) Writs of habeas corpus may be granted by the
    Supreme Court, any justice thereof, the district courts
    and any circuit judge within their respective
    jurisdictions.
    (c) The writ of habeas corpus shall not extend to a
    prisoner unless-- ... (3) He is in custody in violation
    of the Constitution or laws or treaties of the United
    States ... .

filing fee.   The respondents are Eric H. Holder, Jr., Roy L. Hendricks, and John Tsoukaris.

Because it appears from a review of the Petition that Petitioner is not entitled to relief, the Petition will be dismissed.  See 28 U.S.C. § 2243.

## I.   BACKGROUND

Petitioner asserts that he is a native citizen of Jamaica but provides no additional facts as to the date of entry to the United States or his life in this country leading up to the current removal proceedings.

Petitioner states that he has been held in prolonged detention for approximately eighteen months without a custody hearing.  Petitioner has not provided information regarding prior convictions, however, it is presumed that he was held under 8 U.S.C. § 1226(c), which requires the Attorney General to detain certain deportable aliens, including those who have been convicted of an aggravated felony or of violating a state law relating to a controlled substance, during their removal proceedings ("pre-removal-order detention") before a final order of removal is entered.

Petitioner states that a final order of removal was lodged against him on October 14, 2011, which would mean that subsequent to that date, Petitioner's detention is pursuant to 8 U.S.C. § 1231(a) which governs the detention and removal of an alien

subject to a final order of removal ("post-removal-order detention").

In support of his Petition, Petitioner relies upon Demore v. Kim, 538 U.S. 510 (2004) (relating to constitutionality of pre-removal-order detention), and Zadvydas v. Davis, 533 U.S. 678 (2001) (relating to constitutionality of post-removal-order detention).

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

United States Code Title 28, Section 2243 provides in relevant part as follows:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970). Nevertheless, a federal district court can dismiss a habeas corpus petition if it appears from the face of

the petition that the petitioner is not entitled to relief.  See

Lonchar v. Thomas, 517 U.S. 314, 320 (1996); Siers v. Ryan, 773

F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989).

See also 28 U.S.C. §§ 2243, 2255.

### III.   ANALYSIS

Petitioner here appears to challenge both his pre-removal-

order detention and his post-removal-order detention.

Under 8 U.S.C. § 1226(c), the Attorney General is required

to detain certain deportable aliens, including those who have

been convicted of an aggravated felony or of violating a state

law relating to a controlled substance, during their removal

proceedings.  Although § 1226(c) does not provide for bail, an

alien detained pursuant to § 1226(c) may move for a Joseph

hearing to determine if he falls within the categories of aliens

subject to mandatory detention.  In re Joseph, 22 I.&N. Dec. 799

(BIA 1999).[2]

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court

considered whether mandatory pre-removal-order detention under

§ 1226(c) violates due process.  In the case of an alien who

conceded that he fell within the categories of deportable aliens

subject to mandatory detention under § 1226(c), the Supreme Court

---

[2] At the Joseph hearing, a detainee may avoid mandatory
detention by demonstrating that he is not an alien, was not
convicted of the predicate crime, or that the BICE is otherwise
substantially unlikely to establish that he is in fact subject to
mandatory detention.  See 8 C.F.R. § 3.19(h)(2)(ii).

found that detention of deportable criminal aliens pending their removal proceedings did not violate due process.  538 U.S. at 531.  The Court noted that such proceedings typically last only a few months and that pre-removal-order detention has a finite termination point - issuance of a final decision on removability. 538 U.S. at 529-530.  In his concurrence, however, Justice Kennedy took the position that circumstances could arise in which long-term pre-removal-order detention might violate due process. 538 U.S. at 532-33 (Kennedy, J., concurring).

Taking note of Justice Kennedy's guidance, the Court of Appeals for the Third Circuit has held that there are due process limitations on the duration of pre-removal-order detention.

> Under the Supreme Court's holding [in Demore], Congress did not violate the Constitution when it authorized mandatory detention without a bond hearing for certain criminal aliens under § 1226(c).  This means that the Executive Branch must detain an alien at the beginning of removal proceedings, without a bond hearing -- and may do so consistent with the Due Process Clause -- so long as the alien is given some sort of hearing when initially detained at which he may challenge the basis of his detention.  [This is the Joseph hearing.] However, the constitutionality of this practice is a function of the length of the detention.  At a certain point, continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community.  This will necessarily be a fact-dependent inquiry that will vary depending on individual circumstances.  We decline to establish a universal point at which detention will always be considered unreasonable.

. . .

> In short, when detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute.

Diop v. ICE/Homeland Security, 656 F.3d 221, 232-33 (3d Cir. 2011) (footnotes omitted).

Turning to the question of when pre-removal-order detention becomes "unreasonable," the Court of Appeals noted that the petitioner in Demore had been detained only six months, only slightly longer than the average length of pre-removal-order detention in contested cases, when his petition was decided.  The Court agreed with the government that the reasonableness determination must take into account a given individual detainee's need for more or less time, as well as the exigencies of a particular case, but also held that the reasonableness enquiry must take into account errors in the proceedings that cause unnecessary delay.  In Diop, the Court of Appeals concluded that the petitioner's 35-month detention period, extended by the immigration judge's numerous errors and the government's failure to secure, at the earliest possible time, evidence that bore directly on the issue of whether Diop was properly detained, was unreasonably long.

Before he filed this Petition, however, based upon Petitioner's allegations, a final order of removal had been

entered against Petitioner.  Because a final order of removal has
been entered, Petitioner is no longer detained pursuant to
§ 1226(c), which governs only detention <u>prior to</u> the entry of a
final order of removal.  Instead, Petitioner is now detained
pursuant to 8 U.S.C. § 1231(a), which governs the detention of an
alien subject to a final order of removal.

Because Petitioner is no longer detained pursuant to
§ 1226(c),the challenge to his pre-removal-order detention has
become moot.[3]  As there is no longer a live "case or controversy"
regarding Petitioner's pre-removal order detention, <u>see</u> U.S.
Constitution, Article III, the challenge to Petitioner's pre-
removal-order detention will be dismissed.  <u>See</u> <u>Rodney v.</u>
<u>Mukasey</u>, 340 Fed.Appx. 761 (3d Cir. 2009).

Post-removal-order detention is governed by 8 U.S.C.
§ 1231(a).  Section 1231(a)(2) requires the detention of such
aliens during a 90-day "removal period."  Detention beyond the
end of the 90-day removal period is governed by the

_____

[3] Because a final order of removal has now been issued
against Petitioner, it is not likely that he will be detained
ever again under the pre-removal-order detention provision.
Thus, this is not the type of case subject to the mootness
exception for cases that are "capable of repetition" while
"evading review."  <u>See</u> <u>De La Teja v. United States</u>, 321 F.3d
1357, 1361-63 (11th Cir. 2003).  This exception applies only when
"(1) the challenged action [is] in its duration too short to be
fully litigated prior to its cessation or expiration, and (2)
there [is] a reasonable expectation that the same complaining
party [will] be subjected to the same action again."  <u>Weinstein</u>
<u>v. Bradford</u>, 423 U.S. 147, 149 (1975) (per curiam).

constitutional principles set forth by the Supreme Court in

Zadvydas v. Davis, 533 U.S. 678 (2001).

Section 1231(a)(1) requires the Attorney General to attempt

to effectuate removal within the 90-day removal period.

> The removal period begins on the latest of the
> following:
>
> (i) The date the order of removal becomes
> administratively final.
> (ii) If the removal order is judicially reviewed and if
> a court orders a stay of the removal of the alien, the
> date of the court's final order.
> (iii) If the alien is detained or confined (except
> under an immigration process), the date the alien is
> released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section 1231(a)(6) permits continued detention if removal is

not effected within 90 days.  However, the Supreme Court has held

that such post-removal-order detention is subject to a temporal

reasonableness standard.  Once a presumptively-reasonable six-

month period of post-removal-order detention has passed, a

detained alien must be released if he can establish that his

removal is not reasonably foreseeable.  See Zadvydas v. Davis,

533 U.S. 678 (2001); Clark v. Martinez, 543 U.S. 371 (2005).

Thus, the alien bears the initial burden of establishing

that there is "good reason to believe that there is no

significant likelihood of removal in the reasonably foreseeable

future," after which the government must come forward with

evidence to rebut that showing.  Zadvydas, 533 U.S. at 699-701.

8

But see 8 U.S.C. § 1231(a)(1)(C) ("The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.")

In addition, in assessing whether an alien has made the required showing, it must be remembered that, while the Supreme Court in Zadvydas emphasized that the expiration of the six-month presumptively-reasonable period of detention did not mandate release, it also stated that as the period of detention grows "what counts as the 'reasonably foreseeable future' conversely shrinks."  533 U.S. at 701.

Here, the applicable removal period began to run on the date the order of removal became administratively final.[4]  To state a claim under Zadvydas, the six-month presumptively-reasonable removal period must have expired at the time the Petition is filed; a prematurely filed petition must be dismissed without prejudice to the filing of a new Petition once the removal period has expired.  See, e.g., Rodney v. Mukasey, 340 Fed.Appx. 761 (3d Cir. 2009); Akinvale v. Ashcroft, 287 F.3d 1050, 1051 (11th cir.

---

[4] Petitioner states on the face of the Petition that he become subject to a final order of removal on October 14, 2011.

9

2002).  Thus, this claim is not yet ripe.  See, e.g., Ferrer-Chacon v. Department of Homeland Security, 2006 WL 3392930 (D.N.J. 2006).

Since the presumptively-reasonable six-month removal period could not have expired by the time the Petition was filed, Petitioner's challenge to his post-removal-order detention will be dismissed as premature.

Moreover, Petitioner has alleged no facts to suggest that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Here, Petitioner has not suggested any individual barriers to his repatriation, see Zadvydas, 533 U.S. at 684-85 (alien petitioner Zadvydas was a "stateless" individual), nor has he suggested any institutional barrier to his removal, see Zadvydas, 533 U.S. at 686 (alien petitioner Kim Ho Ma was from Cambodia, a country with which the United States has no repatriation agreement).

Petitioner here appears to rely solely upon the passage of time as grounds for relief.  Federal courts disagree as to the extent to which the passage of time can suffice to meet the alien's burden.  Compare Fahim v. Ashcroft, 227 F.Supp.2d 1359, 1365-68 (N.D. Ga. 2002) (mere passage of time insufficient to meet alien's burden of proof), with Seretse-Khama v. Ashcroft, 215 F.Supp.2d 37, 48-54 (D.D.C. 2002) (continued detention for over three years, coupled with eight-month delay since INS last

10

contacted destination country, suffices to meet alien's burden);

Lema v. U.S. I.N.S., 214 F.Supp.2d 1116, 1118 (W.D. Wash 2002),

aff'd on other grounds, 341 F.3d 853 (9th Cir. 2003) (where

destination country's lack of response to request for travel

documents is combined with INS inability to explain silence and

absence of any indication that situation may change, continued

detention would be unreasonable but, where destination country's

failure to respond suggests nothing more than "bureaucratic

inertia," removal remains "foreseeable").  Here, where the

passage of time is less than the six-month presumptively-

reasonable removal period, it is patently not sufficient to

suggest that Petitioner's post-removal-order detention has been

unconstitutionally prolonged.

## IV.   CONCLUSION

For the reasons set forth above, the challenge to

Petitioner's pre-removal-order detention will be dismissed with

prejudice as moot.  The challenge to Petitioner's post-removal-

order detention will be dismissed as premature, without prejudice

to Petitioner filing a new petition should circumstances later

warrant.  An appropriate order follows.

Stanley R. Chesler
United States District Judge

Dated:

11